UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Robert J. Blais, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 10-10734-DJC |
| | ) |
| Michael J. Astrue, Commissioner, | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                                              August 4, 2011

**I.     Introduction**

Plaintiff Robert J. Blais ("Blais") filed claims for disability insurance benefits ("SSDI") and supplemental security income ("SSI") with the Social Security Administration. Pursuant to the procedures set forth in the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3), Blais brings this action for judicial review of the final decision of Defendant Michael J. Astrue, Commissioner of the Social Security Administration ("the Commissioner"), issued by an Administrative Law Judge ("ALJ") on December 5, 2008, denying Blais' claim. Before the Court are Blais' Motion to Reverse and the Commissioner's Motion to Affirm that decision. For the reasons discussed below, Blais' motion is DENIED, the Commissioner's motion is GRANTED and the final decision of the Commissioner is AFFIRMED.

## II. Factual Background

Blais was 44 years old when he stopped working on January 27, 2004. R. 128.[1] He had previously worked as a press operator and custodian. R. 19, 134. In his June 22, 2005 application for SSDI and SSI with the Social Security Administration ("SSA"), he alleged a disability due to a ruptured disc, tremors and anxiety. R. 104, 110, 133.

## III. Procedural Background

Blais filed claims for SSDI and SSI with the SSA on June 22, 2005, asserting that he was unable to work as of January 27, 2004. R. 104, 110, 133. After initial review, his claims were denied on September 2, 2005. R. 59. His claims were reviewed by a Federal Reviewing Official and again denied on February 12, 2008. R. 69. On April 8, 2008, Ross filed a timely request for a hearing before an ALJ pursuant to SSA regulations. R. 72. A hearing was held before an ALJ on November 20, 2008. R. 24. In a written decision dated December 5, 2008, the ALJ found Blais was not disabled. R. 21. In a written notice dated March 1, 2010, the Appeals Council denied Blais' request for review. Accordingly, the ALJ's decision is the final decision of the Social Security Administration.

When Blais filed for disability he claimed that his ruptured disc, tremors and anxiety were the conditions limiting his ability to work. R. 133. The ALJ found that only the degenerative disc impairment was severe. R. 14. The "mental impairments" as well as the "hand tremors" had not imposed more than a minimal impairment of his ability to engage in basic work related activities and

---

[1] Citations to the administrative record in this case, Docket #12, shall be to "R.__."

thus were not severe. R. 15-16. Blais does not contest this finding. Pl. Memo. 11-12.[2] Blais' motion to reverse takes issue with the ALJ's conclusion at steps 4 and 5 concerning his degenerative disc impairment. R. 19-20.

## IV. Discussion

### A. Legal Standards

#### 1. Entitlement to Disability Benefits and Supplemental Security Income

A claimant's entitlement to SSDI and SSI turns in part on whether he has a "disability," defined in the Social Security context as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(I), 423(d)(1)(a); 20 C.F.R. § 404.1505. The inability must be severe, rendering the claimant unable to do his or her previous work or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

The Commissioner must follow a five-step process when he determines whether an individual has a disability for Social Security purposes and, thus, whether that individual's application for benefits will be granted. 20 C.F.R. § 416.920. All five steps are not applied to every applicant; the determination may be concluded at any step along the process. Id. First, if the

---

[2] Moreover, there was substantial evidence supporting the ALJ's findings regarding the mental impairment and tremors. See e.g., R. 265-75, 409-19 (Drs. Carol McKenna's and D. Levoy's psychiatric review indicating Blais had no medically determinable mental impairment or functional limitation); 263 (Dr. Richard Vinacco's psycho-diagnostic interview report concluding that Blais did not show any psychomotor agitation or retardation, he denied counseling, he was alert and oriented and his thought processes were logical and concrete); 367 (Dr. Robert Lambe's report indicated that Blais only had a minimal tremor and it was improving with medication).

3

applicant is engaged in substantial gainful work activity, then the application is denied. Id. Second, if the applicant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, then the application is denied. Id. Third, if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted. Id. Fourth, if the applicant's "residual functional capacity" ("RFC") is such that he or she can still perform past relevant work, then the application is denied. Id. Fifth and finally, if the applicant, given his or her RFC, education, work experience, and age, is unable to do any other work, the application is granted. Id.

### 2. Standard of Review

This Court has the power to affirm, modify, or reverse a decision of the Commissioner upon review of the pleadings and record. 42 U.S.C. § 405(g). Such review, however, is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (citing Manso-Pizarro v. Sec'y of Health and Human Servs., 76 F.3d 15, 16 (1st Cir. 1996)). The ALJ's findings of fact are conclusive when supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the Commissioner's] conclusion." Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

### B. Before the ALJ

#### 1. Medical History

##### a. Degenerative Lumbar Disc/Spine Disease

In early 1995, Blais underwent his first surgery for a ruptured disc on his spine. R. 487-90.

4

After surgery his leg pain was "completely relieved." Id. By April 26, 1995, Dr. Ronald Birkenfeld examined Blais and reported that Blais had complete relief of his leg pain and that, despite mild low back discomfort, Blais was able to walk substantial distances and perform home exercises. R. 490.

Although Blais made a satisfactory recovery from his first surgery in 1995, Blais re-injured his back on January 21, 2004. R. 241. Prior to his second surgery, Blais complained of great pain despite taking strong medication. R. 514. On May 20, 2004, Dr. Birkenfeld performed another surgery on Blais to decompress his nerve root. R. 477. After the second surgery, Blais did not return to work, R. 241, and his leg pain was completely relieved. R. 511. Dr. Birkenfeld gave Blais permission to return to work, after the second surgery, with a 25-pound weight lifting restriction in January 2005. R. 509.

In 2005, Blais was treated by Dr. Ghanshyam P. Massand for his complaints of constant and severe pain which was "aggravated with sitting, walking, bending, twisting, and any kind of activities." R. 241. Dr. Massand's treatment notes reported that Blais' CT scan of his lumbar spine reveled severe degenerative changes on his L5-S1 disc. R. 233. In early February 2005, Blais complained of constant and severe pain in his lower back but his gait and posture appeared unremarkable. R. 241. Later, Dr. Massand recommended "therapy and rehabilitation, continued use of anti-inflammatory drugs as well as an analgesic" and reported that Blais was "unable to return to previous employment." R. 244. Then in March 2005, Dr. Massand indicated that Blais might be able to return to light duty work "after surgery and rehabilitation." R. 246. Blais continued to complain of back pain that radiated to his legs. R. 248-250. Dr. Massand reported that Blais' CAT scan revealed evidence of severe degenerative changes and spinal stenosis so he recommended occasional use of anti-inflammatory drugs and physiotherapy. R. 248-49.

On October 12, 2005, Dr. Peter A. Pizzarello examined Blais for an Independent Medical Examination as a part of Blais' claim for vocational rehabilitation with the Department of Industrial Accidents ("DIA"). R. 280, 308-09. Dr. Pizzarello's report indicated that while Blais was employed as a maintenance worker at Sinclair Manufacturing, he would have to lift 30 to 40 pound boxes, sweep, mop, and dispose of trash. R. 280. Dr. Pizzarello's report states that Blais injured his back while helping to lift a 300-pound iron cylinder. Id. Dr. Pizzarello reviewed a CT scan done by Dr. Massand that revealed spinal stenosis and severe degenerative changes. R. 280. Dr. Pizzarello reported that during the examination Blais was walking erect, his motor coordination was intact, his lumbar spine was symmetric and besides some limitation in movement and tenderness, his examination was mostly normal. R. 281.

In response to the questions set forth by the DIA pertaining to Blais' vocational services claim, Dr. Pizzarello stated that Blais was "totally disabled" and should avoid bending, stooping, lifting, pushing, pulling and should not repetitively lift weights in excess of 10 or 15 pounds. R. 282. Based in part of the evidence in Dr. Pizzarello's October 2005 report, the DIA determined, on January 12, 2006, that Blais was "not suitable" for vocational rehabilitation services because his present medical condition precluded services. R. 308.

On October 14, 2005, Blais was seen by Dr. Gregory Brick to considered the possibility of surgical intervention after Blais continued to complain of pain and failed to respond to conservative treatment. R. 250. During examination, Blais complained of back pain and left leg pain. R. 289. During multiple examinations, Dr. Brick reported that Blais' lumbar spine x-ray showed degenerative disk disease, some compression and minimal spinal stenosis. R. 289-92. However, Dr. Brick observed that Blais was "not in acute distress" and was able to walk despite allegations

6

of constant pain. R. 291-92. Dr. Brick also recommended that Blais receive epidural injections which "helped minimally [for] one to two days" with a 30% pain reduction. R. 289, 291.

Drs. Barbara Scolnick and M.A. Gopal, both non-treating physicians, provided separate physical RFC assessments for Blais on July 21, 2005, and February 1, 2008, respectively. R. 252-59, 423-430. Both Dr. Scolnick and Dr. Gopal indicated that Blais could occasionally lift and/or carry 20 pounds, frequently lift 10 pounds, stand and/or walk for about six hours in an eight-hour workday, sit for about six hours in an eight-hour workday and occasionally balance, stoop, kneel, crouch and crawl. R. 253-54, 424-25. Both Dr. Scolnick and Dr. Gopal cited to specific facts and came to the same RFC determination that Blais had the RFC to do light work. R. 253, 424. Dr. Scolnick based her conclusion on consideration of Blais' age, his surgical history, his medical exams and his daily activities including driving, vacuuming and cooking. R. 253. Dr. Gopal based his conclusion on consideration of Blais' chronic lower back pain and leg pain, his surgical history, his treatment medicine, his normal gait and the lack of evidence of tremors. R. 424. Dr. Gopal also reported that Blais' allegations of pain appeared credible. Id.

Then in March 2007, Blais returned to Dr. Birkenfeld complaining of recurrent leg pain. R. 507. Upon examination, Dr. Birkenfeld reported that Blais' gait and posture were normal, Blais showed "excellent strength" and "seemed comfortable although [Blais] sa[id] he [wa]s in constant pain." Id. After reviewing Blais' MRI and CT studies of his lumbar spine, Dr. Birkenfeld "[did] not see any definite mal-alignment" or clear evidence of nerve compression. R. 506.

Dr. Massand examined Blais again on July 19, 2007 and reported that Blais still had complaints of chronic low back pain and left leg pain. R. 325. Dr. Massand only recommended occasional use of Motrin and physical therapy to deal with the pain. Id. Dr. Massand also indicated

7

that, despite being totally disabled from his previous employment, Blais was still able to work and "will benefit from a change of occupation." Id.

### 2. ALJ Hearing

At the November 20, 2008 administrative hearing, the ALJ heard testimony from Blais, medical expert ("ME") Dr. Edward Spindell and vocational expert ("VE") Dr. Michael Larrea.

#### a. Blais' Testimony

Blais testified that his constant pain in his back and legs prevented him from lifting more than 20 pounds, that he has pain when he is sitting and laying down and that he thought he could sit in one place for 40 minutes and walk half a mile. R. 26, 33-34. Blais indicated that he had been looking for work, but did not receive any interviews or call-backs. R. 41, 44. Blais testified to having "constant 24 hour pain all the time" and that he treats his pain with regular Tylenol to reduce his pain level and rates his pain, on a scale of one to ten with ten being the worst, from a seven to a four. R. 27-28. Blais' daily activities included driving, reading, watching television, quilting, socializing with friends and family, attending church and housework which included washing dishes, vacuuming and cooking. R. 28-32, 35. Blais testified that he was not taking any medications for his anxiety or depression and did not believe that he needed treatment for such alleged impairment. R. 33.

#### b. Spindell's Testimony

Dr. Edward Spindell is an orthopedic surgeon who testified as the ME. R.18, 44. After reviewing Blais' record, the ME testified that Blais's records indicate that he had low back pain and left leg pain that was never completely relieved after surgery. The ME stated that Blais' MRI studies showed degenerative changes while Blais retained good motor strength. The ME also

testified that Blais received epidural injections and went to pain management. R. 47. The ME briefly mentioned Blais' X-ray of his knees which was negative and that the records also did not reveal any counseling for Blais' alleged chronic depression and anxiety. Id. The ME agreed with Dr. Gopal that the appropriate restrictions on Blais' function should be light exertion work with limitations in his ability to crawl, crouch, stoop, kneel and balance. Id.

### c. VE Larrea's Testimony

VE Larrea testified at the hearing that Blais' past work as a maintenance custodian, although described in the record by Dr. Birkenfeld as "heavy," R. 486, is classified as medium exertion and semi-skilled just above unskilled. R. 49. The VE also testified that Blais' work as a press operator was light exertion and semi-skilled. Id.

The ALJ asked the VE to consider a hypothetical individual with the claimant's same age, education and vocational background who was capable of performing work at the light exertional level with occasional climbing, crawling, crouching, stooping, kneeling and balancing. R. 50. The VE testified that the hypothetical claimant would be precluded from Blais' past work, but would be able to perform other jobs in the regional economy. R.49-51. The VE also indicated that the hypothetical claimant could also perform jobs in the regional economy at the sedentary level. R. 51.

Blais' attorney, Ryan Benharris, also examined the VE and asked him to consider the number of other jobs available for a hypothetical individual who "can do no repeated bending, stooping or lifting." R. 53. The VE stated that some of the cleaning jobs would be precluded as well as the "primarily standing" cashier positions. Id. Attorney Benharris also asked about the number of jobs in the regional economy if the individual could not sit for more than 40 minutes and would not walk for 20 minutes. Id. The VE testified that, although all of the light jobs would be precluded, "[m]any

9

of the sedentary jobs would still be appropriate." Id.

### 3. Findings of the ALJ

Following the five-step process, 20 C.F.R. § 416.920, at step one, the ALJ found that Blais' has not engaged in substantial gainful activity since January 27, 2004, the alleged onset date. R. 14. At step two, the ALJ found that Blais' degenerative lumbar disc/spine disease has imposed more than a minimal impairment of his ability to engage in basic work related activities and thus constituted a severe impairment. Id. At step three, the ALJ found that Blais has not had an impairment or combination of impairments that has met or medically equaled the requirements of listing 1.04 for disorders of the spine or any other listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 17. Blais does not dispute the findings at steps one through three.

At step four, the ALJ found that Blais was unable to perform any past relevant work. R. 19. Blais does not dispute this finding. The ALJ's finding was based on the determination that Blais has the RFC to perform a wide range of "light work"[3] that can be done with further nonexertional limitations. R. 17. Blais disputes the ALJ's RFC determination.

The ALJ found at step five that there are jobs that exist in significant numbers in the national economy that Blais can perform. R. 19. Blais disputes the finding at step five.

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. 404.1567(b).

### C. Blais' Challenges to the ALJ's Findings

#### 1. ALJ's Consideration of Treating Physicians' Reports in Determining Blais' RFC

In determining Blais' RFC, the ALJ discussed the reports of three treating physicians: Dr. Birkenfeld, Dr. Massand and Dr. Pizzarello. R. 18-19. Blais' critique of the ALJ's conclusions rests on his objection that the ALJ did not give enough weight to the reports of two of his treating physicians, Drs. Massand and Pizzarello. Pl. Memo at 14.

##### a. Standard of Review

"The hearing officer is bound to give 'controlling weight' to the opinions of treating physicians only if 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] case record,'" Partridge v. Astrue, 754 F.Supp.2d 192, 197 (D. Mass. 2010) (quoting 20 C.F.R. § 404.1527(d)(4)), but "may reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors." Castro v. Barnhart, 198 F.Supp.2d 47, 54 (D. Mass. 2010); Coggon v. Barnhart, 354 F.Supp.2d 40, 54 (D. Mass. 2005) (discussing the relevant statutes and regulations). If an ALJ properly disregards the conclusions of a treating physician, the "ALJ is entitled 'to piece together the relevant medical facts from the findings and opinions of multiple physicians.'" Cooper v. Astrue, 2011 WL 1163127, at *6 (D. Mass. Mar. 29, 2011) (quoting Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987)). "If the choice is supported by substantial evidence, the ALJ may prefer the opinion of a reviewing physician to that of a claimant's treating physician." Id. (citing Arroyo v. Sec'y of Health & Human Servs., 932 F.2d 82, 89 (1st Cir. 1991). If the treating physician's opinion is inconsistent with other substantial evidence in the record, the conflict is for the ALJ—and

11

not the Court—to resolve. Rodriguez, 647 F.2d at 222.

### b. Treating Physicians' Medical Assessments

### I. Dr. Massand

Dr. Massand found that Blais was totally disabled in the context of Blais' prior work as a custodian and recommended a return to light duty work. R. 19, 246, 334. Blais argues that the ALJ improperly rejected the functional assessment of Dr. Massand. Although the ALJ did not explicitly state how much probative value she gave to Dr. Massand's assessment, R. 19, Blais' argument fails for two reasons.

First, there is substantial evidence in the record supporting the ALJ's decision that Blais had the RFC to do a wide range of "light work." See e.g., R. 246, 333-34 (Dr. Massand's reports indicating that Blais could perform to light duty work); 509, 512 (Dr. Birkenfeld's treating assessments that states Blais can return to work with a 25-pound lifting restriction); 26 (Blais' testimony that he can lift up to, and no more than, 20 pounds); 47 (ME Spindell's testimony that Blais can return to light work which includes an ability to lift 20 pounds); 253 (Dr. Scolnick's non-treating physical RFC indicating Blais can lift up to 20 pounds occasionally and 10 pounds frequently); 424 (Dr. Gopal's non-treating physical RFC indicating Blais can lift up to 20 pounds occasionally and 10 pounds frequently). An ALJ's failure to mention expert opinions in various ways does not warrant reversal where there was substantial evidence to support the ALJ's final conclusion. See, e.g., Goncalves v. Astrue, 2011 WL 1659352 at *2 (D. Mass. 2011). Here, there is substantial evidence for the ALJ's final conclusion and there is no question that the ALJ did not overlook evidence that would support Blais' claim. Accordingly, the ALJ's conclusion was proper. See Castro, 198 F.Supp.2d at 54; Partridge, 754 F.Supp.2d at 197.

Second, Dr. Massand's reports only serve to reinforce the ALJ's determination and undermine Blais' claim that he is unable to perform light work. R. 246, 333-34 (Dr. Massand's reports indicating that Blais could perform to light duty work).

### ii. Dr. Pizzarello

Dr. Pizzarello found, among other things, that Blais was limited to lifting 10-15 pounds. R. 19, 282. The ALJ gave Dr. Pizzarello's October 12, 2005, assessment "minimal/less probative weight" because Dr. Pizzarello's assessment was inconsistent with the record as a whole. R. 19. There is evidence in the record as a whole supporting the ALJ's reasons including the reports of treating physicians, the reports of non-treating physicians and the testimony at the hearing. See e.g., R. 509, 512 (Dr. Birkenfeld's treating assessments that states Blais can return to work with a 25-pound lifting restriction); 26 (Blais' testimony that he can lift up to, and no more than, 20 pounds); 47 (ME Spindell's testimony that Blais can return to light work which includes an ability to lift 20 pounds); 253 (Dr. Scolnick's non-treating physical RFC indicating Blais can lift up to 20 pounds occasionally and 10 pounds frequently); 424 (Dr. Gopal's non-treating physical RFC indicating Blais can lift up to 20 pounds occasionally and 10 pounds frequently). Accordingly, the ALJ's conclusion was proper. See Castro, 198 F.Supp.2d at 54; Partridge, 754 F.Supp.2d at 197.

### c. ALJ's RFC Determination

Based on the record as a whole, the ALJ concluded that since January 27, 2004, Blais has had a RFC for light work. R. 19. The ALJ considered the entire record including the objective evidence found in the reports from Blais' treating physicians, the testimony at the hearing and the assessments of the non-treating reviewing physicians. R. 18-19. There is substantial evidence in the record to support the ALJ's conclusion that Blais has the RFC for light work. See e.g., R. 509,

13

512 (Dr. Birkenfeld's treating assessments that states Blais can return to work with a 25-pound lifting restriction); 26 (Blais' testimony that he can lift up to, and no more than, 20 pounds); 47 (ME Spindell's testimony that Blais can return to light work); 253 (Dr. Scolnick's non-treating physical RFC indicating Blais can lift up to 20 pounds occasionally and 10 pounds frequently); 424 (Dr. Gopal's non-treating physical RFC indicating Blais can lift up to 20 pounds occasionally and 10 pounds frequently); 334 (Dr. Massand's treating assessment that recommends that Blais perform light-duty work). Accordingly, the ALJ's RFC determination at step four is supported by substantial evidence. See Rodriguez, 647 F.2d at 222; Evangelista, 826 F.2d at 144; Arroyo, 932 F.2d at 89; Cooper, 2011 WL 1163127, at *6.

### 2. ALJ Determination of Blais' Credibility Regarding Complaints of Pain

In assessing a claimant's complaints of pain, an ALJ must first find that the individual's impairments, as demonstrated by "medical signs and laboratory findings . . . that could reasonably be expected to produce the symptoms." Social Security Ruling ("SSR") 96-7p, 61 Fed.Reg. 34,483 (July 2, 1996); Pires v. Astrue, 553 F.Supp.2d 15, 22 (D. Mass. 2008). If the claimant meets that threshold, the ALJ should evaluate whether "the intensity, persistence and functionally limiting effects" of the pain would affect the individual's ability to work. SSR 96-7p; Pires, 553 F.Supp.2d at 22. This step requires an appraisal of the credibility of the person's statements regarding his or her symptoms and their functional effects. Id. The First Circuit has explained that, where faced with subjective claims of pain, an ALJ must investigate all avenues presented that relate to subjective complaints. Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 28-29 (1st Cir. 1986); Pires, 553 F.Supp.2d at 22. The ALJ must take into account any evidence relating to the

14

"Avery factors"[4] in judging the credibility, specifying his or her reasons for disbelieving any of those complaints. Pires, 553 F.Supp.2d at 22-23; See SSR 96-7p; Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (remanding credibility decision to ALJ and stating that any new credibility finding "must be supported by substantial evidence and the ALJ must make specific findings as to the relevant evidence he considered"). "The ALJ is not required to address every Avery factor in [her] written decision." Foley v. Astrue, 2010 WL 2507773, at *7 (D. Mass. June 17, 2010) (citing NLRB v. Beverly Enters.-Mass., 174 F.3d 13, 26 (1st Cir. 1999)). As long as the decision contains specific reasons for the credibility finding and there is evidence in the record to support the finding, it is sufficient. Foley, 2010 WL 2507773, at *7.

It is undisputed that Blais has degenerative lumbar disc/spine disease, an impairment that could produce the expected symptoms. Def. Memo at 16; R. 14. The transcript at the hearing also indicates the ALJ conducted an appropriate Avery inquiry into Blais subjective complaints. See e.g., R. 27 (ALJ inquiring about the duration of Blais' pain); 27-28 (ALJ inquiring about the type, dosage and effectiveness of Blais' pain medication); 33-34 (ALJ inquiring about Blais' functional restrictions); 28-32, 34-35 (ALJ inquiring about Blais' daily activities). In Guyton v. Apfel, the ALJ appropriately satisfied the requirements of Avery by considering the claimant's daily activities, the nature and duration of the claimant's pain, the claimant's pain medication and the claimant's functional restrictions. Guyton, 20 F.Supp.2d 156, 166 (D. Mass. 1998).

Here, the ALJ acknowledged that Blais' pain was credible to some extent, stating that Blais

---

[4] These factors include: (1) the nature, location, onset, duration, frequency, radiation, and intensity of any pain; (2) precipitating and aggravating factors (e.g., movement, activity, environmental conditions); (3) type, dosage, effectiveness, and adverse side effects of any pain medication; (4) treatment, other than medication, for relief of pain; (5) functional restrictions; and (6) the claimant's daily activities.

"has experienced some degree of pain, other symptoms and functional limitation." R.18. However, the ALJ found that Blais' pain was not sufficiently severe to prevent Blais from performing light work. Id. There is substantial evidence to support this finding. See e.g., R. 143-148 (Blais' 2005 Function Report where he self-reports being able to do the following daily activities despite having pain and having issues lifting, bending, standing, walking, sitting and kneeling: study for his GED, prepare his own meals, vacuum, dust, drive, pay bills and socialize with family); 161, 165 (Blais' 2008 Function Report where he self-reports being able to walk a half mile despite having "constant pain 24-7"); 27-28 (Blais' testimony and treatment history indicated that he was only taking over the counter Tylenol for his pain which reduced his pain level from a seven-out-of-ten to a four-out-of-ten); 47 (ME Spindell's testimony that Blais can return to light work); 334 (Dr. Massand's treating assessment that recommends that Blais perform light-duty work). Accordingly, the ALJ properly considered Blais' complaints of pain and determined the severity of same.

### 3. Determination by another Governmental Agency

Blais finally argues the ALJ failed to reference a decision by the DIA stating that Blais was not suitable for vocational rehabilitation. R. 308. "Evidence of a disability decision by another governmental or non-governmental agency cannot be ignored and must be considered." 71 FR 45593 (discussing 20 C.F.R. §§ 404.1504 and 416.904); Pinkham v. Barnhart, 94 Soc. Sec. Rep. Serv. 318 (D. Me. 2004); see also N.L.R.B. v. Beverly Enters.-Mass., Inc., 174 F.3d 13, 26 (1st Cir. 1999) (stating that "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"). However, under 20 C.F.R. §§ 404.1504 and 416.904, a determination by another agency is not binding. Blais concedes that the ALJ is not bound by the DIA's findings, but argues that the ALJ erred by failing to consider the DIA's findings.

Here, it is clear the ALJ considered the DIA's "vocational rehabilitation" determination. R. 308. Even though the ALJ's decision did not make a direct reference to the DIA's determination, the ALJ discussed the DIA's determination at the hearing, R. 48, and the ALJ "consider[ed] the entire record." See N.L.R.B., 174 F.3d at 26; R. 19, 308.

However, even if the ALJ did not consider the DIA's eligibility finding, failure to consider a vocational rehabilitation decision amounts to harmless error. Frost v. Barnhart, 2004 WL 1529286 at *12-13(D. Me. May 7, 2004), aff'd 2005 WL 248161 at *1 (1st Cir. 2005). Evidence of eligibility for workers' compensation benefits is of little to no probative value in the Social Security context because the eligibility criteria for "Vocational Rehabilitation" by DIA differ significantly from those employed in the social security analysis by SSA. See Frost, 2004 WL 1529286 at *12-13 (explaining that when the record "is devoid of any detail concerning the process by which the plaintiff was adjudicated eligible for workers' compensation," and given that a worker injured in New Hampshire "may qualify for continuing workers' compensation benefits even if he or she is capable of performing other work," "evidence of eligibility for workers' compensation benefits is of little to no probative value" in the context of SSI benefits); Ahearn v. Astrue, 2007 WL 951562 at *5 (D. Me. Mar. 27, 2007) (citing Laffely v. Barnhart, 2005 WL 1923515 at *5 (D. Me. Aug. 9, 2005)). Here, the DIA's "vocational rehabilitation" is a workers' compensation benefit. Mass. Gen. L. c. 152 §§ 30G, 30H; R. 308-09. Therefore, even if an ALJ failed to consider this determination, it would have been harmless error. See Frost, 2004 WL 1529286 at *12-13; Ahearn, 2007 WL 951562 at *5.

**V.    Conclusion**

Based on the foregoing, the Commissioner's motion to AFFIRM is GRANTED and Blais' motion to REVERSE is DENIED.

**So ordered.**

                                                  /s/ Denise J. Casper
                                                  United States District Judge